IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN E. VASQUEZ, | No. C 07-4250 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| THOMAS FELKER, Warden, | |
| Respondent. | |

## INTRODUCTION

This is a habeas case filed pro se by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted based on the two claims in the petition. Respondent has filed an answer and a memorandum of points and authorities in support of it. Although given an opportunity to do so, petitioner has not filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2003, a jury in Alameda County Superior Court convicted petitioner and two co-defendants, Galindo Sifuentes and Hai Minh Lee, of first-degree murder (Cal. Pen. Code § 187), and found true the special circumstances that petitioner committed the murder during the course of a robbery and a burglary (Cal. Pen. Code §§ 190.2(a)(17)(A),(G)) and that he murdered a peace officer (Cal. Pen. Code § 190.2(a)(7)). The jury also found that he had personally used a firearm (Cal. Pen. Code § 12022.53(d)).

At the penalty phase of the trial, the jury could not reach a verdict, and the trial court

declared a mistrial (Ex. 1 at 3690, 3730). Thereafter, the trial court sentenced petitioner to a term of life without the possibility of parole in state prison (*id.* 2014, 3784-89).

On January 31, 2006, the California Court of Appeal affirmed the conviction and sentence (Ex. 7). The California Supreme Court denied petitioner's petition for review on May 17, 2006 (Ex. 9). Petitioner filed the instant federal habeas petition on August 20, 2007.

The following description of the evidence presented at trial is from the opinion of the California Court of Appeal (Ex. 7 at 2-3). On the evening of December 11, 1998, Sifuentes went into a restaurant in Dublin, California, asked for a table and ordered only a soda. Approximately half an hour later, a waiter presented him with the bill and Sifuentes said that he needed to get his money from his car. Petitioner and Le then entered the restaurant and Le pulled out a pellet gun. The three of them commandeered all the customers and employees into the kitchen area, and while doing so, petitioner robbed a man of his wallet. Sifuentes and Le had pellet guns and petitioner had a semiautomatic pistol. Petitioner fired his gun into a fryer in the kitchen and escorted the manager to the cash drawer where he took more money. The phone rang and, under orders from petitioner, the manager answered and told the police everything was all right. An employee called 911, and another activated a security device before all the customers and employees were ordered into the walk-in refrigerator.

Deputy Sheriff Angela Schwab entered the restaurant and was surprised by petitioner, who pointed his gun at her and demanded that she surrender her weapon. He hit Schwab in her face and took her gun. Le and Sifuentes then walked her to the back of the restaurant. Deputy John Monego entered the restaurant, and petitioner shot and killed him. Petitioner, Sifuentes and Le then fled and were soon arrested.

**ANALYSIS**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

2

Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court.  *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), amended, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Id.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340.

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his rights under *Batson v.*

3

1  *Kentucky*, 476 U.S. 79 (1986), were violated by the peremptory strikes of black jurors; and (2)
2  his due process rights were violated by removals for cause of jurors who failed to disclose prior
3  arrests, charges or convictions on their questionnaires (Pet. 6).  A third claim was previously
4  dismissed because it was only based on state law.

   **1.    Peremptory Strikes**

6       Petitioner claims that the prosecutor used peremptory challenges to strike African-
7  American prospective jurors based on their race, in violation of the Equal Protection Clause.
8       The Equal Protection Clause forbids the challenging of potential jurors solely on account
9  of their race.  *Batson v. Kentucky*, 476 U.S. 79, 89 (1986).  A party may raise an equal protection
10 claim on behalf of a juror excluded because of the juror's race, regardless of whether the party
11 and the excluded juror share the same race.  *Powers v. Ohio*, 499 U.S. 400, 406 (1991).  A
12 violation of equal protection under *Batson* is established in a three-step process: (1) the
13 defendant must make out a prima facie case that the prosecutor exercised peremptory challenges
14 on the basis of race "by showing that the totality of the relevant facts gives rise to an inference of
15 discriminatory purpose;" (2) if the prima facie case is made, the burden shifts to the prosecutor
16 to articulate a race-neutral explanation for striking the jurors in question; and (3) if the
17 prosecutor carries the burden of showing a race-neutral explanation, the defendant has the
18 burden to prove purposeful discrimination.  *Batson*, 476 U.S. at 93-94, 97-98.  In California, a
19 party who believes his opponent is using his peremptory challenges to strike jurors on grounds of
20 group bias alone may raise the point by way of a timely motion under *People v. Wheeler*, 22 Cal.
21 3d 258, 280 (1978).
22      The California Court of Appeal summarized the relevant trial court proceedings.  *People
23 v. Vasquez*, 2006 WL 226759, 2-3 (Cal. Ct. App. 2006).  During jury selection, the defense made
24 three *Wheeler* motions following the prosecutor's peremptory strikes of African-American
25 jurors.  *Id.* at 2.  On each occasion, the trial court found that the defense had made a prima facie
26 case of discrimination, the prosecutor offered reasons for his strikes, and the trial court denied
27 the defense motions after finding the prosecutor's reasons were racially neutral, valid and not
28 motivated by race.  *Id.* at 2-3.

The first defense motion was made after the prosecutor exercised three peremptory challenges against prospective African-American jurors T.J, G.N., and A.J.. *Id.* at 2. The prosecutor explained that T.J. was excused because he was reluctant to impose the death penalty and lived in Berkeley, a "hotbed of anti-death-penalty people." *Ibid.* He struck G.N., a probation officer, because of his religious beliefs opposing the death penalty. *Ibid.* As for A.J., the prosecutor cited her mixed feelings on the death penalty and the fact that her brother's friend was charged with murder. *Ibid.* He also commented on her wearing leather pants in court and her unfriendliness toward him. *Ibid.*

The defense made its second motion after the prosecutor excused two more African-American prospective jurors. *Id.* at 3. The prosecutor initially explained that he had passed the jury at least 10 times with Juror No. 4, an African-American female, on the jury. *Ibid.* He went on to explain that he excused K.W. because K.W. was opposed to the death penalty and would find it difficult to vote for it, and because he was hostile and argumentative during questioning. *Ibid.* He struck K.M. because K.M. had given equivocal answers regarding the death penalty and because K.M. was offended when the prosecutor brought up K.M.'s failure to disclose that his twin brother was arrested several times. *Ibid.*

The defense made its last motion after the prosecutor excused four additional African-American prospective jurors. *Ibid.* The prosecutor explained that M.T. was active in the Baptist church, expressed extreme reservations about the death penalty, and while M.T. understood his duty to follow the law, his religious beliefs prevented him from passing judgment on another person. *Ibid.* The prosecutor struck F.B. because he was extremely hostile and unfriendly, had a bad experience with the police when an officer pointed a gun at his head, and made contributions to organizations that are opposed to the death penalty. *Ibid.* As for K.S., the prosecutor explained that she had a conviction for forgery, would not consider the death penalty for non-shooters, and showed a lack of responsibility by being 27-year-old single mother with a seven-year-old child. *Ibid.* The prosecutor stated that R.G. was a lawyer, which he did not want on the jury, he disliked the fact that she had a son when she was 16 years old, he cited her numerous relatives who had served time in prison, and he believed that it was not clear that she

could impose the death penalty as a born-again Christian. *Ibid.*

The California Court of Appeal conducted a comparative juror analysis in determining that the prosecutor had not engaged in purposeful discrimination under *Batson*'s third step. *Id.* at 4-9 (citing *Miller-El v. Dretke*, 545 U.S. 231, 242-43 (2005)). Comparative juror analysis – i.e., determining whether non-challenged jurors possess any of the characteristics on which the prosecution challenged jurors in the protected group – may tend to prove discrimination at the third *Batson* step. *Snyder v. Louisiana*, 552 U.S. at 484-85 (2008); *Miller-El*, 545 U.S. at 242-43; *see also Kesser v. Cambra*, 465 F.3d 351, 360 (9th Cir. 2006) (comparative juror analysis "principles expounded in *Miller-El* are clearly established Supreme Court law for AEDPA purposes"). This comparative analysis may include the jury voir dire and the jury questionnaires of all venire members, not just those venire members stricken. *Green v. Lamarque*, 532 F.3d 1028, 1030 (9th Cir. 2008) (citations omitted). The California Court of Appeal examined the voir dire answers and questionnaires of each of the stricken jurors and compared them to those of jurors who were not stricken. *Vasquez*, 2006 WL 226759 at 4-9. As the Court of Appeal cited the correct federal standard applicable to petitioner's claim, i.e. the three-part *Batson* test, and conducted the comparative juror analysis that federal law calls for, the state court's rejection of petitioner's claim was not "contrary to" clearly established federal law for AEDPA purposes. *See Williams*, 529 U.S. at 412-13 (state court's decision is not "contrary to" federal law under Section 2254(d)(1) if it applies the correct federal standard).

The Court of Appeal's analysis was also a "reasonable application" of the federal standard under AEDPA. *See ibid.* (state court's decision not "unreasonable application" of federal law under Section 2254(d)(1) if it was "objectively" reasonable application of federal standard). Seven of the nine stricken jurors had reservations about the death penalty, including generally opposed or conflicted feelings about it (T.J, K.W., A.J., G.N.), reservations about voting for it on a ballot (T.J., A.J., G.N.), reluctance to impose it on non-shooters (K.S., M.T., K.W. ), donating to groups opposed to the death penalty (F.B.), and religious beliefs that conflicted with the death penalty (M.T., G.N.). *Vasquez*, 2006 WL 226759 at 4-9. By contrast, none of the seated and alternate jurors expressed any reservations about the death penalty during

6

voir dire, and all but three of them indicated on their questionnaires that they would vote for the death penalty on a ballot. *Id.* at 5. Of the other three, who had only stated in their questionnaires that they were not sure about voting it into law, two expressed affirmatively during voir dire that there should be a death penalty, and the third, unlike the seven stricken jurors, expressed no reservations during voir dire about imposing the death penalty. *Ibid.* The two stricken jurors who had not expressed reservations about imposing the death penalty also had race-neutral reasons for being excused that were not shared by the seated jurors and alternates. K.M. was questioned by the court about an arrest record and had to clarify that it was his twin brother's record, not his, and he became irritated when the prosecutor then asked him during voir dire for his driver's license and social security numbers. *Id.* at 6. K.M. had failed to include his brother's arrest record in response to a question on the jury questionnaire asking about any arrests or convictions of family members. *Ibid.* R.G. was a lawyer, which the prosecutor did not want on his jury, and had also had numerous relatives who had served time in prison. *Id.* at 7. The same could not be said about any of the seated jurors. On this record, the Court of Appeal reasonably concluded, based on a comparative juror analysis, that the prosecutor did not purposefully discriminate against the prospective jurors based on their race within the meaning of *Batson*.

Petitioner also argues that the trial court failed to properly evaluate the prosecutor's race-neutral reasons for striking the jurors by failing to permit defense counsel to rebut the prosecutor's proffered reasons and on one occasion (with G.N.) interjecting its own race-neutral reason for striking a juror. Petitioner cites no Supreme Court authority, and this court is not aware of any, suggesting that either of these actions by the trial court violate the federal Constitution or federal law. *See Williams*, 529 U.S. at 412 (Section 2254(d(1) restricts the source of federal habeas relief to decisions of the Supreme Court). In any event, as reasonably explained by the California Court of Appeal, *Vasquez*, 2006 WL 226759 at 9-10, the trial court's actions were harmless because, for the reasons discussed above, the record supports the trial court's findings that there was no purposeful discrimination, and petitioner does not explain how additional rebuttal argument by defense counsel might have altered this conclusion. The trial

7

1  court's suggesting that G.N.'s tardiness was an additional race-neutral reason to exclude him was
2  similarly harmless because the prosecutor had already given his reasons for excusing G.N.,
3  reasons that on their own, as discussed above, sufficiently establish a lack of discriminatory
4  purpose.  Petitioner's last argument, that the trial court should not have allowed the prosecutor to
5  incorporate the voir dire and questionnaire answers by reference into his argument, is also not
6  based on any Supreme Court authority and is devoid of any showing of prejudice.

   Consequently, petitioner is not entitled to federal habeas relief based upon his first claim.

### 2. Removal for Cause

Petitioner also claims that his right to due process was violated because of the removal for cause of eleven prospective jurors on the grounds that they failed to disclose prior arrests, charges or convictions in their questionnaires.

The juror questionnaires given to all prospective jurors required them to answer whether they, "any family member or close friend" had "ever been accused of, arrested for, charged with or convicted of any crime," and if so to explain.  *Vasquez*, 2006 WL 226759 at 11.  The trial court emphasized this question in reviewing the questionnaire with the prospective jurors.  *Ibid.*  During the course of voir dire, the prosecutor determined that fifteen prospective jurors failed to disclose arrests or convictions on their questionnaires.  *Ibid.*  The court granted the prosecution's challenge for cause as to eleven of these, and the court dismissed another one on its own motion because she suffered a prior felony conviction.  *Ibid.*  The three remaining jurors were not removed for cause because two of them, including K. M. discussed above, were mistakenly identified as having suffered criminal convictions, and the third had not deliberately failed to disclose prior arrests.  *Ibid.*

A trial court may exclude for cause any prospective juror who will be unable to render an impartial verdict based on the evidence.  *Irvin v. Dowd*, 366 U.S. 717, 723-24 (1961).  While there is Supreme Court precedent providing that a state court's failure to remove a biased juror may violate due process because it would result in trial by an impartial jury, *see, e.g., Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *McDonough Power Equipment v. Greenwood*, 464 U.S. 548, 555 (1984), there is no such clear precedent providing that removing a prospective

1  juror for cause absent sufficient evidence of bias also violates due process, as this has no bearing
2  on whether the jurors that ultimately served were biased or impartial, *see*, *e.g.*, *United States v.*
3  *Joseph*, 892 F.2d 118, 124 (D.C. Cir. 1989) (no constitutional right to service of a particular
4  juror, and dismissal of a juror during voir dire, even if improper, does not reflect any impartiality
5  of the jury that served); *United States v. Calhoun*, 542 U.S. 1094, 1103 (9th Cir. 1976) (noting
6  that improper dismissal of two jurors during voir dire would not be reversible).

7  In any event, the dismissal of jurors for failing to truthfully answer jury questions or to
8  disclose the criminal backgrounds of themselves or their relatives has been held to be proper
9  under federal law.  *See*, *e.g.*, *McDonough*, 464 U.S. at 554 (the necessity for truthful answers by
10 prospective jurors is "obvious"); *United States v. Blackman*, 66 F.3d 1572, 1575 n.3 (11th Cir.
11 1995) (upholding dismissal for cause of juror who had not filled out jury questionnaire and
12 whose husband had a criminal record); *United States v. Buckhalter*, 986 F.2d 875, 879 (5th Cir.
13 1993) (upholding the trial court's dismissal fo a juror for failing to disclose a prior arrest).  As a
14 result, it was not "contrary to" or "an unreasonable application of" federal law for the state
15 courts to find that the trial court properly dismissed for cause prospective jurors who had not
16 disclosed the criminal backgrounds of themselves, their family members or their close friends, as
17 required by the jury questionnaires.

18 Petitioner also argues that because eight of the prospective jurors who were removed for
19 cause for failing to disclose their or their family members' criminal backgrounds were African-
20 Americans, their removal demonstrated systematic racial discrimination in violation of
21 petitioner's right to equal protection.  The trial court indicated, however, that all prospective
22 jurors who did not answer truthfully the question regarding criminal backgrounds would be
23 removed for cause.  *Vasquez*, 2006 WL 226759 at 12.  Indeed, the trial court removed four
24 prospective jurors who were not African-American for this very reason.  *Id.* at 11-12.
25 Consequently, petitioner's argument is not supported by the record.
26 Petitioner is not entitled to habeas relief on this claim.

## CONCLUSION

28 The petition for a writ of habeas corpus is **DENIED**.

9

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment close the file.

**IT IS SO ORDERED.**

Dated: September   27  , 2010.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\VASQUEZ4250.RUL.wpd